HECLA POWDER COMPANY, Appellant, *v.* SIGUA IRON COMPANY, Respondent.

*Contract — damages for its breach — an agreement to deliver an interdicted article in a foreign country — a fine imposed upon the consignee may be recovered from the consignor.*

In a case where, if an event happens, it must inevitably cause loss and damage to one or the other of two contracting parties, the party who has contracted that such an event shall not happen, although he cannot specifically perform the contract, because the event may result through the act of God or inevitable necessity, must stand the risk and make good the loss.

Parties who enter into a contract in reference to the carrying on of any business are presumed to know how it is usually carried on.

In an action brought to recover upon a draft given by the defendant to the plaintiff, it appeared that the plaintiff entered into a contract with the defendant to deliver a certain amount of powder in Santiago de Cuba, both parties understanding that this powder was an interdicted article in Cuba, and that unless permission to enter it was obtained a fine and seizure might result; when the powder arrived at Santiago it was seized by the Spanish authorities, and the defendant's agents were fined an amount which was made the basis of a counterclaim.

*Held*, that as the plaintiff failed to deliver the powder it had no cause of action upon the draft;

That the fine imposed upon the defendant was a damage which was the natural and probable result of the breach of the contract, and that the loss must be borne by the party who was guilty of the breach;

That it was, therefore, a proper subject for a counterclaim.

APPEAL by the plaintiff, the Hecla Powder Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 11th day of March, 1895, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order bearing date the 4th day of March, 1895, and entered in said clerk's office, denying the plaintiff's motion for a new trial made upon the minutes.

*William P. Quinn* and *Alexander T. Goodwin*, for the appellant.

*Frederic J. Swift*, for the respondent.

O'BRIEN, J.:

The action was brought to recover $950 and interest upon an accepted draft which defendant gave for Hecla powder, bought

from plaintiff, to be delivered in Santiago de Cuba. Defendant denied that the powder had been delivered, and set up a counter-claim based upon the plaintiff's attempt and failure to make the delivery, alleging that it neglected to procure the proper and necessary permit from the Spanish government to enter and land the powder in Santiago, and failed to give defendant the agreed notice, by reason of which the powder was declared contraband and seized by the Spanish government, and a fine of $3,472.49 imposed upon the defendant by such government, which it was obliged to pay, and did pay under protest.

The plaintiff made a contract with the defendant to deliver 5,000 pounds of Hecla powder to defendant's agents, Brooks & Co., in Santiago de Cuba. The parties understood that this powder was an interdicted article in Cuba, and that, unless permission to enter it was obtained, a fine and seizure might result. The plaintiff had made previous shipments to Cuba, and, in addition to the knowledge thus obtained as to the laws and regulations in regard to entering the powder, its attention was specifically called to the difficulty of delivery by the agents of defendant, at the time the contract was made, by the latter's expressing a doubt as to plaintiff's ability to land the powder, and by entering into a contract which required plaintiff to obtain the necessary permits of the Spanish consul in New York, and to take such other measures as might be necessary to get the powder into Cuba. Upon this point the defendant's witnesses testified that plaintiff agreed to send it and its agents previous notice of the shipment of the powder, and to forward the permit to enter it together with the bill of lading, so that defendant's agents might have them at the time of the arrival of the vessel. These conditions were disputed, the plaintiff claiming that there was no agreement to send previous notice or to forward the documents mentioned. The fact, however, is that plaintiff obtained a permit from the Spanish consul and a bill of lading, but these were not mailed, but were handed to the captain of the vessel carrying the powder for his own use and for transmission to defendant's agents, but whether as a matter of fact they were ever delivered to the latter is left in doubt.

After considerable delay, the powder was shipped, and upon arrival of the vessel in the harbor of Santiago it was seized by the Spanish authorities, but whether such seizure was on board the vessel.

and the powder was then placed upon the custom house lighters, or whether it was seized after it was placed on lighters that had been brought there by the defendant's agents, was a disputed question of fact upon which there was slight if any evidence, the plaintiff claiming that it was seized after delivery to defendant's agents, and the defendant as strenuously contending that the evidence shows it was seized on the vessel. Such seizure occurred notwithstanding that the bills of lading, invoice and the consular permit were handed to the custom house officials; and whether their act was a mere arbitrary and wanton one, or was pursuant to any law of Cuba, is not made clear. This same remark is applicable to nearly all the testimony appearing upon the disputed questions of fact, which has been presented on both sides in such a misty and shadowy way as to leave in doubt everything but two salient facts; one, that the plaintiff entered into a contract to deliver the powder in Santiago de Cuba; and the other, that it was seized when it arrived there by the Spanish authorities and the defendant's agents were fined the amount which is the basis of the counterclaim.

There was no serious dispute or question as to the amount of the fine paid by the defendant and found by the jury, and the parties not having litigated that below, it is too late to urge it upon the appeal.

With such facts conceded and with the unsatisfactory light shed by the rest of the testimony, we are to dispose of the two questions presented : *First*, as to whether the plaintiff made out a cause of action upon the draft; and the *second*, as to whether by way of counterclaim the defendant was entitled to recover the amount of the fine paid by its agents at Santiago. Respecting the former, little need be said. It is beyond dispute that plaintiff's contract was to deliver the powder to the defendant's agents at Santiago ; and that there was a failure to prove such delivery the jury has found.

The more serious question is as to the liability of the plaintiff to reimburse the defendant for the fine which was imposed by and paid to the Spanish authorities. At first blush it might seem difficult to predicate a liability on the plaintiff's part to reimburse the defendant for what, so far as appears, might have been the unlawful and unwarranted act of the Spanish government in seizing the

powder and imposing the fine. The law only recognizes damages which are natural and probable, and not those which are extraordinary and unlikely to be foreseen. Remote consequential losses cannot be recovered. (*Putnam* v. *B'way & Seventh Ave. R. R. Co.*, 55 N. Y. 108, 119 ; Sedgwick on Damages [8th ed.], §§ 122, 124.) And it is urged by appellant that the payment of such a fine would not be the direct or natural consequence of any act or omission on its part, and the possibility of a fine being imposed upon the defendant or its agents was exceedingly remote. Without quarreling with this argument, we think that when consideration is taken of the contract between the parties and what it included, and the duty that devolved on each, we can reach a conclusion as to who should bear a loss which in the first instance was suffered by the defendant.

It was within the knowledge of both the contracting parties that the introduction of powder into Cuba was a matter of difficulty, requiring the taking of certain precautions, including the obtaining of a consular permit, and with knowledge of such difficulties and of the risk assumed, the plaintiff, for a consideration, agreed not only to sell the powder, but to assume the risk of delivering it to defendant's agents in Santiago de Cuba. The jury having found that it did not perform its contract, and did not deliver the powder to the defendant's agents — from which the inference naturally flows that it was seized while still in the possession of the plaintiff — we are brought to a point where, upon well-settled principles of law, we must hold that the loss resulting from the breach of such contract by the plaintiff should be suffered by it. If, as claimed by defendant, the testimony shows that the usual precautions which the plaintiff agreed to take were not taken, such as giving the defendant's agents previous notice of the shipment and the name of the vessel, and forwarding to them the necessary documents for the entry of the powder, then is added another ground, that of negligence, upon which plaintiff's liability might be predicated. Such conduct was not only negligent, but a breach of the express contract which, according to the defendant, was entered into. If, however, we eliminate the disputed terms of the agreement as to the notice and the transmission to defendant's agents of the permit and other documents, and consider the admitted terms of the agreement which

placed upon the plaintiff the obligation of delivery to defendant's agents at Santiago, which, as the jury found, was never performed, then the failure and neglect to discharge the duty and obligation in this respect, which the plaintiff owed to defendant, established a cause of action in favor of the defendant; and where, as here, the damages resulting are certain in their nature and amount, and flow actually from the breach, they are recoverable.

In support of the proposition that a cause of action arises in favor of the defendant, we would refer to the cases of *Harmony* v. *Bingham* (12 N. Y. 107); *Pollett* v. *Long* (56 id. 200); *Tompkins* v. *Dudley* (25 id. 273); *Phillips* v. *Taylor* (49 N. Y. Super. Ct. 318); *Bigler* v. *Hall* (54 N. Y. 167), and *Mill Dam Foundry* v. *Hovey* (38 Mass. 441). In the latter case the court said : " The good sense of the rule seems to be this, that in a case where, if an event happens, it must inevitably cause loss and damage to one or the other of the contracting parties, the party who has contracted that such an event shall not happen, although he cannot specifically perform that contract, because the event may happen through the act of God or inevitable necessity, yet he shall stand to that risk and make good · all the loss which shall occur in consequence of the happenings of the event contemplated. The party thus contracting takes the consequences.

" Parties who enter into a contract in reference to the carrying out of any branch of business are presumed to know and understand how that business is usually carried on, how it must necessarily be conducted, and to have reference to such known circumstances in their contracts."

Upon the proposition that such damages as defendant here suffered from the breach of the contract to deliver, and which flowed naturally from such breach and being certain in their nature, are recoverable, authority is to be found in the cases of *Griffin* v. *Colver* (16 N. Y. 489); *Dodds* v. *Hakes* (114 id. 260); *Allen* v. *McConihe* (124 id. 342). In addition to these we have the leading case of *Hadley* v. *Baxendale* (9 Exch. Rep. 341, 353), wherein ALDERSON, B., thus states the rule : " Now, we think the proper rule in such a case as the present is this : Where two parties have made a contract, which one of them has broken, the damages which the other party ought

to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendants, and thus known to both parties, the damage resulting from the breach of such contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under the special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case; and of this advantage it would be very unjust to deprive them."

Our conclusion, therefore, is that, as the plaintiff agreed to deliver, and in the attempt, which was abortive, but which plaintiff agreed would be successful, the defendant was placed in a position where it suffered loss flowing naturally from a cause covered by the contract, such loss should be borne by the one guilty of the breach.

In addition to these questions, we have the subsidiary ones based upon certain exceptions taken to rulings upon evidence, and one exception to the charge of the learned trial judge. An examination of such has not shown that any error was committed sufficient to disturb the verdict which, upon conflicting evidence and under what might be designated as a fair preponderance of evidence, was reached by the jury.

We think that the judgment and order were right, and should be be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment and order affirmed, with costs.